UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FRANCOIS M. FLEURENTIN,

              Plaintiff,

     -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORP. AND KINGS COUNTY HOSPITAL
CENTER,

              Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
18-CV-05004 (AMD) (RLM)

**ANN M. DONNELLY,** United States District Judge:

The plaintiff brings this action against defendants New York City Health and Hospitals Corp. ("H+H") and Kings County Hospital Center ("KCHC") alleging that the defendants failed to promote him and created a hostile work environment in violation of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), New York State Executive Law § 296, and New York City Human Rights Law § 8-107. (ECF No. 25.) The defendants[1] move to dismiss the complaint as untimely under 42 U.S.C. § 2000e-5 and for failure to state a claim. (ECF No. 26.) For the reasons that follow, the defendants' motion to dismiss is granted.

**BACKGROUND**[2]

The following facts are drawn from the plaintiff's amended complaint. (ECF No. 25.) Plaintiff Francois M. Fleurentin was born in Haiti and immigrated to the United States. (*Id.* ¶

---

[1] Defendant KCHC cannot be sued because it is an operating division of H+H, not a separate corporate entity. *See* N.Y. Unconsol. Law § 7385(1); *see also Igartua v. Elmhurst Hosp. D-11 Psychiatric Ward*, No. 09-cv-3287, 2011 WL 1337494, at *1 n.1 (E.D.N.Y. Mar. 17, 2011). I therefore construe the plaintiff's complaint as only raising claims against H+H.

[2] For purposes of this motion, I accept as true the factual allegations in the amended complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

1

18.) In 1993, the plaintiff began working in medical offices connected with the New York City Department of Health. (*Id.* ¶ 19.) He earned bachelor degrees in Medicinal and Pharmaceutical Chemistry and Chemistry Education from Brooklyn College. (*Id.* ¶¶ 20, 35.) In 2004, H+H hired the plaintiff as a Public Health Educator I at KCHC, where his responsibilities included "conduct[ing] educational activities that address the needs of target populations, evaluat[ing] the effectiveness of then-existing public health programs, and maintain[ing] relationships with other health care professionals." (*Id.* ¶¶ 20, 28.)[3] H+H also has more senior Public Health Educator II positions; those employees "work on special projects as required," "carry out on-the-job training and evaluate performance of assigned staff, and perform more supervisory roles over Level I's [*sic*] and other staff members." (*Id.* ¶ 29.)

In March of 2005, the defendants moved the plaintiff to another operating division of H+H, East New York Diagnostic and Treatment Center ("ENY"). (*Id.* ¶ 40.) There, he continued as a Public Health Educator I in the Department of Obstetrics and Gynecology ("OB/GYN"). (*Id.*) The defendants asked him to perform additional duties for patients in the Diabetes Department. (*Id.* ¶¶ 40-42.) In August 2006 and again in December 2007, the plaintiff asked for a raise because of these additional responsibilities but received no response. (*Id.* ¶¶ 43-44.) On February 27, 2008, the plaintiff filed an internal grievance, claiming he should be promoted to Senior Public Health Educator if he had to work for multiple departments. (*Id.* ¶ 45.) The defendants denied the plaintiff's request at a grievance meeting on March 17, 2008.

---

[3] The plaintiff alleges in the amended complaint that a manager representative accused him of forging his application documents shortly after the plaintiff was hired. (ECF No. 25 ¶¶ 37-39.) The accusation does not appear to have affected the plaintiff's job prospects, because he started working at KCHC in 2004. It is not clear from the complaint that this incident bears any relation to the plaintiff's discrimination claims.

(*Id.* ¶ 47.) The plaintiff contacted his union hearing officer, Denise Johnson-Green, requesting additional compensation; she also denied his request. (*Id.* ¶ 48.)

In May of 2008, having unsuccessfully sought promotions four times in two years, the plaintiff approached Dr. Reba Williams, the physician in charge of the program, and "spoke to her about his desire to be paid more." (*Id.* ¶ 49.) The next day, the plaintiff's direct supervisor, Patricia Hinds, confronted him for "going outside of the in-office chain of command." (*Id.* ¶ 51.) Ms. Hinds "began screaming" at the plaintiff and was "visibly angry." (*Id.* ¶ 51.) The plaintiff felt "threatened . . . upset and dismayed." (*Id.*) A month later, Ms. Hinds met with the plaintiff and gave him "an extremely negative" work evaluation. (*Id.* ¶ 54.) The plaintiff asked Ms. Hinds to explain the basis for the negative review, but she did not. (*Id.* ¶ 54.) At the end of June, the plaintiff filed a grievance for several unspecified "instances of harassment" by Ms. Hinds, but his union did not take any action. (*Id.* ¶¶ 55-56.)

The next several years appear to have passed without incident. In 2011, the defendants assigned the plaintiff to a new project, the Infant Mortality Reduction Initiative, where he worked for the next five years. (*Id.* ¶¶ 57-58.) The plaintiff's responsibilities included attending conferences and developing educational programs. (*Id.* ¶ 59.) During this period, the plaintiff incurred travel expenses in connection with his new position. (*Id.* ¶ 60.) He submitted an arbitration claim for the travel expenses, which the defendants denied. (*Id.* ¶ 60.) In 2015, the plaintiff's fellow staff members selected him to portray Santa Claus for a holiday event. (*Id.* ¶ 62.) However, the plaintiff's supervisor at the time, Marie Millet, "rejected the idea," saying that it would be "unacceptable" to have someone with a "heavy Haitian accent" play Santa Claus. (*Id.* ¶ 63.)[4]

---

[4] The plaintiff alleges in the first complaint that Ms. Millet is Haitian-American. (ECF No. 1 at 26.)

In March of 2016, Ms. Millet assigned the plaintiff to a new department, the Department of Community Affairs. (*Id.* ¶¶ 65-73.) When the plaintiff refused to accept the reassignment, his union representative, George Wade, contacted him and told him that Ms. Millet would fire him if he did not accept the position. (*Id.* ¶¶ 66-71.) In June of 2016, the plaintiff met with Ms. Millet and his new direct supervisor, Karen James-Wade, to sign an updated job description. The plaintiff alleges that the defendants assigned him "degrading" tasks unworthy of someone with his professional background: picking up food from grocery stores and restaurants, preparing and serving food, and inspecting cooking equipment. (*Id.* ¶¶ 76-77.) The defendants also required the plaintiff to distribute bananas to patients, a task he considered racially motivated and a reference to his Haitian background. (*Id.* ¶¶ 75-76.) The plaintiff's similarly-situated non-Haitian colleagues were not expected to perform these tasks. (*Id.* ¶¶ 79, 85.) The plaintiff felt that he "was a Public Health Educator in title, but a bus boy in practice." (*Id.* ¶ 77.) During this same time period, the defendants asked the plaintiff to take on additional responsibilities typically assigned to a Public Health Educator II, a more senior position. (*Id.* ¶ 77.) For example, Karen James-Wade, the plaintiff's supervisor after his transfer, asked the plaintiff to train a new Public Health Educator I in the OB/GYN department, a responsibility usually assigned to a second-level Public Health Educator. (*Id.* ¶¶ 81, 29.)

After several months, the plaintiff applied for a new position in a different H+H operating division because he felt "humiliated" about picking up food for events and performing tasks below his experience and educational level. (*Id.* ¶ 86.) The plaintiff did not receive an interview. (*Id.* ¶ 88.) Instead, according to the plaintiff, the supervisor hired a friend for the position, and told the plaintiff that she did not select him because he "lacked prior managerial experience." (*Id.*)

On July 11, 2017, the plaintiff brought his allegations of discrimination before the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 5.) In October of 2017, the defendants transferred the plaintiff back to the OB/GYN Department. (*Id.* ¶ 91.) The EEOC notified the plaintiff of his right to sue on May 31, 2018. (*Id.* ¶ 6.) The plaintiff then commenced this action on August 31, 2018. (ECF No. 1.)

## LEGAL STANDARD

A court considering a Rule 12 motion must accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon*, 699 F.3d at 227. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678). Although the pleading standard does not require "detailed factual allegations," it demands "more than labels and conclusions" and "a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In an employment discrimination action, the plaintiff must allege sufficient non-conclusory facts to "nudge" his claim "across the line from conceivable to plausible" to survive a motion to dismiss. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal citations omitted).

A court limits its consideration to "the factual allegations in plaintiff['s] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing

suit." *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (alterations in original); *see also Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993) (noting that on a 12(b)(6) motion, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered.").

## DISCUSSION

I liberally construe the amended complaint as asserting discrimination claims in violation of Title VII, New York State Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law § 8-107 ("NYCHRL"). Most of the plaintiff's claims are untimely. None of them states a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

### I. Plaintiff's Failure to Promote Claims Under Title VII and the NYSHRL (Counts I and III)

A. Timeliness

A plaintiff must file a Title VII employment discrimination charge within 300 days of the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1). The plaintiff filed charges with the EEOC on June 11, 2017. (ECF No. 25 ¶ 5.) Accordingly, any claims occurring before August 15, 2016 are untimely unless the plaintiff can establish the application of the continuing violations doctrine or equitable tolling.

The continuing violations doctrine "allows courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002) (quotations and citation omitted). The doctrine applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir.

2004)) (alterations omitted). It does not apply "to discrete unlawful acts, even where those discrete acts are part of a 'serial violation [],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (citing *Morgan*, 536 U.S. at 114-15) (alterations in original).

The plaintiff alleges a series of "discrete acts of retaliation and discrimination . . . often separated by years," beginning in 2004. *Rowe v. New York State Dep't of Taxation & Fin.*, No. 18-cv-2302, 2019 WL 4463567, at *2 (2d Cir. Sept. 18, 2019) (declining to apply continuing violations doctrine to otherwise time-barred claims). During this eleven-year period, the plaintiff worked in different departments and different operating divisions, under the supervision of different managers, each of whom rejected his various requests for salary raises, promotions, or transfers. The Supreme Court has held that failure to promote is a discrete unlawful act and is therefore not subject to the continuing violations doctrine. *See Morgan*, 536 U.S. at 114. The plaintiff's failure to promote claims which accrued prior to August 15, 2016 are discrete acts and are time-barred.

The doctrine of equitable tolling does not apply to these claims. Equitable tolling is appropriate only if a plaintiff: (1) was unaware of his cause of action due to the misleading conduct of the defendant, (2) actively pursued judicial remedies by filing defective pleadings during the statutory period, or (3) was prevented by extraordinary circumstance from exercising his right. *See Jacobs v. SUNY at Buffalo School of Medicine*, 204 F. Supp. 2d 586, 592 (S.D.N.Y. 2002) (citing *Miller v. IT & T Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)). The plaintiff argues that he did not receive timely legal advice about his claims. This is not a basis for equitable tolling. Accordingly, the plaintiff's failure to promote claims based on acts prior to August 15, 2016 are time-barred.

B. Merits

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NYSHRL mirrors this language, and courts analyze these federal and state claims in tandem. *See Brown v. Daikin America, Inc.*, 756 F.3d 219, 226, n.7 (2d Cir. 2014); *Awad v. City of New York*, No. 13 cv. 5753, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014) ("Discrimination claims under § 1981, § 1983, and NYSHRL are analyzed under the same framework and pleading standard as Title VII claims.")

To establish a *prima facie* case of discrimination under Title VII or the NYSHRL, the plaintiff must show that he is a member of a protected class, that he was qualified for the position he held, and that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *See Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). At the pleading stage, the plaintiff has a "minimal" initial burden; he need not prove every element of a *prima facie* case of discrimination, but he must allege facts that plausibly suggest that his employer took an adverse action because of his race, color, or national origin. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85-86 (2d Cir. 2015); *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018); *Chowdhury v. Sadovnik*, No. 17-CV-2613, 2017 WL 4083157, at *3-4 (E.D.N.Y. Sept. 14, 2017).

The defendants do not dispute that the plaintiff, a Haitian man, is a member of a protected class. The plaintiff alleges that over the course of a decade the defendants repeatedly

8

discriminated against him based on his race, color, or national origin by failing to increase his salary, failing to promote him to more senior roles, transferring him out of his preferred department, and forcing him to take on "degrading" and humiliating tasks. (ECF No. 25 ¶ 75). Apart from the defendants' failure to promote the plaintiff to the role of Coordinating Manager in December of 2016, all of these incidents are time-barred. Yet even if they were timely, the amended complaint does not adequately plead two of the remaining elements of a failure to promote claim: that the plaintiff was qualified for the promotions he requested or that the defendants failed to promote the plaintiff because of his race, color, or national origin.

### i. *Qualification for denied promotions*

To make out a failure to promote claim, a complaint must contain "a description of the responsibilities or duties" of the position "from which one could infer that the plaintiff was qualified for that position." *Mendelsohn v. University Hosp.*, 178 F. Supp. 2d 323, 328-329 (2d Cir. 2002). The plaintiff claims that he sought several promotions and salary raises between 2005 and 2016, but does not describe "the responsibilities or duties" required by these positions, or how he was qualified for them. *Id.* at 328. This is particularly true for the only promotion the defendants denied the plaintiff after August 15, 2016—the role of Coordinating Manager at Crown Heights Medical Center. (ECF No. 25 ¶¶ 86-90.) The plaintiff summarizes his professional experience, but does not describe the job, its duties or necessary qualifications, or allege that he "was qualified for the job for which [he] applied." *Howley*, 217 F.3d at 150.

### ii. *Adverse employment actions*

The defendants also argue that the plaintiff does not adequately plead any adverse employment actions. The plaintiff pleads four broad categories of potentially adverse actions: (1) various promotions he was denied between 2005 and 2016, (2) a negative performance

review in 2008, (3) modified duties in 2005 and 2016, and (4) various decisions made by the defendants during the relevant period. As noted above, most of these claims are untimely. Only one of these actions—the failure to promote the plaintiff in December of 2016—qualifies as a timely adverse action for purposes of his Title VII claim.

Under Title VII, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal citation and quotation marks omitted)). Examples of materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya*, 202 F.3d at 640 (internal citation omitted). "The prohibition against discrimination is not limited to 'pecuniary emoluments,' but includes discriminatorily-motivated diminution of duties.'" *Predo v. Nissho Iwai American Corp.*, 128 F.3d 789, 791 (2d Cir. 1991) (citations omitted).

Viewing the facts in the light most favorable to the plaintiff, the defendants' failure to promote the plaintiff in December 2016 constitutes an adverse employment action. (ECF No. 25 ¶¶ 86-90.) Failing to promote an employee is "within the core activities encompassed by the term 'adverse actions.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) ("[s]imilarly meritless is defendants' contention that plaintiff suffered no adverse action. Adverse employment actions include both refusals to promote and demotions.").[5]

---

[5] The defendants' subsequent transfer of the plaintiff back to his original position in 2017 does not qualify as an adverse employment action. Indeed, that seems to have been what the plaintiff wanted all along. (ECF No. 25 ¶ 91.) Giving the plaintiff the position he wanted is not an adverse employment action.

Apart from this single timely claim, the plaintiff also makes claims about various other decisions, including a 2004 accusation that the plaintiff forged his credentials, a 2008 negative performance review, the denial of reimbursement for certain travel expenses between 2011 and 2016, and various modifications to his duties in 2005 and 2016.[6] These claims are untimely and do not constitute adverse employment actions for purposes of a Title VII claim. The plaintiff does not allege that there were any materially adverse changes in the terms or conditions of his employment after any of these decisions. And even where the plaintiff had additional or different duties, he does not demonstrate that any of these changes amounted to adverse employment actions, rather than "a mere inconvenience or an alteration of job responsibilities." *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 506 (S.D.N.Y. 2010) (internal citations and quotation marks omitted). Allegations that the defendants gave the plaintiff "unpleasant assignments cannot support a claim of . . . race discrimination because those assignments do not constitute the type of 'materially adverse change in the terms and conditions of employment' required to establish an adverse employment action." *Staten v. City of New York*, No. 16-CV-5317, 2017 WL 2937698, at *7 (S.D.N.Y. July 10, 2017) (quoting *Galabya* 202 F.3d at 640), *aff'd*, 726 F. App'x 40 (2d Cir. 2018). Therefore, the remaining acts alleged by the plaintiff, in

---

[6] The plaintiff alleges that in 2008, Patricia Hinds—his immediate supervisor at the time—gave him a negative performance review after he requested a salary raise. (ECF No. 25 ¶ 54.) A negative review may be considered an adverse employment action if there is "proof that this evaluation had any effect on the terms and conditions of [the plaintiff's] employment." *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (internal citation and quotation omitted). But "a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019). The plaintiff does not claim that Ms. Hinds' performance review had any impact on his employment. Even before the negative review, the plaintiff unsuccessfully applied for several promotions and salary raises, which led to the confrontation with Ms. Hinds about the plaintiff "going outside of the in-office chain of command" for a raise. (ECF No. 25 ¶ 51.)

addition to being time-barred, do not constitute adverse employment actions within the meaning of Title VII.

C. Inference of Discrimination

Finally, the plaintiff must "plausibly plead . . . that the circumstances surrounding an adverse employment action give rise to an inference of discrimination." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 215 (E.D.N.Y. 2014) (quoting *Kirkweig v. New York City Dep't of Educ.*, No. 12-cv-2635, 2013 WL 1651710, at *4 (S.D.N.Y. Apr. 4, 2013)). A plaintiff may raise an inference of discrimination by alleging that the adverse employment action was taken "because of" his protected characteristic. *Vega*, 801 F.3d at 88. Other circumstances giving rise to an inference of discrimination include, but are not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Nothing in the complaint suggests discriminatory motivation for the defendants' actions. Aside from being time-barred, the pre-2016 conduct does not plausibly allege that the defendants acted "because of" the plaintiff's race, ethnic background, or color. After August 15, 2016, the plaintiff alleges one timely adverse employment action—that Ms. Millet denied his application to be the Coordinating Manager in Crown Heights Medical Center. But he does not plead circumstances giving rise to an inference of discrimination. First, while the plaintiff's amended complaint is silent as to Ms. Millet's background, the original complaint states that Ms. Millet is Haitian. (ECF No. 1 ¶ 31; ECF No. 27 at 7.)[7] "A well-recognized inference against

---

[7] Statements in superseded pleadings, while not conclusive admissions, are still admissible for evidentiary purposes. *See In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 291 (S.D.N.Y.

12

discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class." *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005). Regardless of Ms. Millet's background, the plaintiff does not allege that Ms. Millet rejected him because of his race, ethnicity, or national origin. Rather, the plaintiff alleges that Ms. Millet hired another applicant, Yahjira Vasquez, because she was Ms. Millet's friend. (ECF No. 25 ¶¶ 61, 88-90.) Failure to promote claims are meant to address workplace discrimination, not nepotism. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) *superseded in part and on other grounds by* Fed. R. Civ. P. 37(e) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments."); *see also Rowe v. New York State Dep't of Taxation and Fin.*, No. 18-cv-2302, 2019 WL 4463567, at *2 (2d Cir. Sept. 18, 2019) (finding allegations of nepotism alone insufficient raise an inference of discrimination). Ms. Millet also told the plaintiff that he did not have the necessary qualifications for the job. (ECF No. 25 ¶¶ 61, 88-90.) Under these circumstances, he has not pled a sufficient claim of discrimination.

The plaintiff's allegation that he and Ms. Vasquez were similarly situated in all material respects does not change the analysis. He provides no information about Ms. Vasquez that would allow the court to "compar[e] the qualifications of the plaintiff with those of the person

---

2008) (citing *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)). "A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version." *McKeon*, 738 F.2d at 31; *see also Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir. 1929) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission . . . but it still remains as a statement . . . like any other extrajudicial admission made by a party or his agent."); *compare Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) (affirming district court's finding that the plaintiff worked sixty-three hours per week despite original complaint and first amended complaint containing different statements), *overruled on other grounds, Slayton v. American Exp. Co.*, 460 F.3d 215 (2d Cir. 2006), *with Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (affirming district court's refusal to permit a plaintiff to amend her complaint to omit certain admissions), *abrogated on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

promoted." *Martinez*, 208 F. Supp. 3d at 487. He does not describe Ms. Vasquez's qualifications or say whether she is a member of the protected class—two facts necessary to determine if Ms. Vasquez is a suitable comparator. Nor does the complaint suggest that Ms. Vasquez and the plaintiff were otherwise similarly situated. While the plaintiff and the comparator "need not to be 'identical' . . . [t]he plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance' . . ." *Brown*, 756 F.3d at 230 (quoting *Graham*, 230 F.3d at 40). The complaint does not establish that resemblance. Therefore, Ms. Vasquez' promotion does not raise any inference of disparate treatment.[8]

## II. Hostile Work Environment (Count II)

The plaintiff also alleges that in 2015 and 2016, the defendants "embarrassed" and "humiliated" him by refusing to let him play Santa Claus for a holiday event because of his accent, transferring him to another department, and singling him out to distribute bananas to patients—which he believed to be a reference to his Haitian background. (ECF No. 25 ¶¶ 105-109.)[9] While not time-barred, these actions do not establish a pervasive pattern of discrimination that would support a hostile work environment claim.

---

[8] The amended complaint is silent as to Ms. Vasquez' ethnicity, but the plaintiff alleges in his opposition to the defendants' motion to dismiss that Ms. Vasquez is "a non-Haitian person outside of Plaintiff's protected class." (ECF No. 28 at 11.) But in reviewing a Rule 12(b)(6) motion to dismiss, a court may only consider the factual assertions made within the four corners of the complaint. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

[9] The plaintiff does not appear to allege that other actions—such as the defendants' failure to promote him between 2005 and 2016, his negative performance review in 2008, or his unsuccessful application for Coordinating Manager—are part of his hostile work environment claim. (ECF No. 25 ¶¶ 105-107 (describing the plaintiff's hostile work environment claim); ECF No. 28 at 13 (arguing that "Millet's conduct in denying [the plaintiff] the ability to entertain children as Santa Claus, and also forcing him to hand out bananas . . ." subjected the plaintiff to "a pervasively abusive hostile work environment.")). To the extent the plaintiff meant to include them as part of a hostile work environment claim, none of them implicate the plaintiff's race, ethnicity, or national origin, and therefore would not meaningfully advance the plaintiff's hostile work environment claim. Nothing in the complaint suggests a discriminatory rationale for these actions. *See Alfano*, 294 F.3d at 376 (removing from consideration incidents that could "support an inference that [the plaintiff] was mistreated" where they "do not support an inference that this was because of" the plaintiff's protected status). Nor does the plaintiff plead facts

A. Timeliness

Unlike the plaintiff's failure to promote claims, his hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. As a result, under the continuing violations doctrine, if a Title VII plaintiff has experienced an "ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Nghiem v. U.S. Dept. of Veterans Affairs*, 323 F. App'x 16, 17 (2d Cir. 2009) (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004)). Under the continuing violations doctrine, the statute of limitations runs from the "last act" of discrimination. *Id.* For the continuing violation doctrine to apply to his otherwise time-barred allegations of a hostile work environment, the plaintiff must allege "both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). The plaintiff cites three incidents: his supervisor, Marie Millet, refusing to let him play Santa Claus at a holiday event because of his accent, his reassignment to the Department of Community Affairs, and the defendants "embarrass[ing]" and "humiliat[ing]" him by directing him to distribute bananas to patients—which he saw as a reference to his Haitian background. (ECF No. 25 ¶¶ 105, 107.) All of these incidents involved the same supervisor and allegedly targeted the plaintiff because of his membership in a protected class. It is not immediately obvious to me that refusing to let an employee play the part of Santa Claus at a party falls into the category of work-related actions. Nevertheless, giving the plaintiff the benefit of every conceivable doubt, I conclude that he has sufficiently alleged a continuing

---

from which a court could infer that the defendants treated him differently from white or non-Haitian employees. *See id.* Facially neutral incidents may be considered as part of the totality of the circumstances in a hostile work environment claim, but only if "a reasonable fact-finder could conclude" the incidents were grounded in discrimination. *Id.* at 378.

15

violation by the defendants that extended into 2016, and that the plaintiff's Title VII hostile work environment claim is not time-barred.[10]

B. Merits

"A plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To determine whether a work environment is hostile, the court considers the totality of the circumstances, including "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999) (citing *Harris v. Forklift Sys.*, 510 U.S. at 23); *see Thompson v. Landers*, No. 17-CV-5857, 2018 WL 5045762, at *3 (E.D.N.Y. Oct. 17, 2018). The plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997), *superseded on other grounds by* N.Y.C. Local L. No. 85. Furthermore, "it is 'axiomatic' that in order to establish a . . . hostile work environment under Title VII, a plaintiff must demonstrate that the

---

[10] For purposes of this action, the conduct underlying the plaintiff's hostile work environment claims is limited to actions by Ms. Millet, his supervisor in 2015-2016: (1) refusing to allow the plaintiff to be Santa Claus because of his Haitian accent, (2) reassigning the plaintiff to the Department of Community Affairs, and (3) singling the plaintiff out for "degrading" tasks not worthy of his expertise and which his non-Haitian colleagues were not asked to do, like distributing food to patients and inspecting cooking equipment. (ECF No. 25 ¶¶ 102-109.)

conduct occurred because of" the plaintiff's protected status. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

The actions the plaintiff cites are neither severe nor pervasive enough to support a hostile work environment claim. His supervisor, Ms. Millet, denied the plaintiff the chance to be Santa Claus because of his Haitian accent, reassigned the plaintiff to the Department of Community Affairs, and asked the plaintiff to distribute food to patients and inspect cooking equipment, tasks the plaintiff says are degrading. (ECF No. 25 ¶¶ 102-109.) None of these discrete, sporadic incidents was "extraordinarily severe." *Cruz*, 202 F.3d at 570. Denying the plaintiff the opportunity to play Santa Claus or asking him to distribute bananas to patients "cannot reasonably be characterized as physically threatening or humiliating." *Brennan*, 192 F.3d at 319 (finding no hostile work environment based on sex where male co-worker put up pictures of nude and partially clothed men in office shared with female plaintiff). Nor do these tasks seem to have interfered with the plaintiff's employment. The plaintiff acknowledges that picking up and delivering food was part of his job in the Community Affairs Department. (ECF No. 25 ¶¶ 75-77.) Accordingly, the hostile work environment claim is dismissed.

## III. Discrimination under the NYCHRL (Count IV)

Claims brought under the NYCHRL must be analyzed "separately and independently from any federal and state law claims," and should be construed "broadly in favor of discrimination plaintiffs." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations omitted). However, claims under the NYCHRL are subject to the *McDonnell-Douglas* burden-shifting analysis applicable to Title VII and the NYSHRL. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011). Even construing the plaintiff's claims "broadly" in his favor, the complaint does not allege any facts that could allow

the Court to connect the defendants' actions across twelve years to any discriminatory rationale, or to suggest that the plaintiff possessed the qualifications for the promotions he sought. As the plaintiff does not allege facts that would allow for broader liability for discrimination under the NYCHRL than under Title VII and the NYSHRL, his claims for discrimination under the NYCHRL are dismissed.[11]

## CONCLUSION

The plaintiff's claims are dismissed in their entirety for failure to state a claim. The defendants' motion to dismiss is granted and the amended complaint is dismissed.

**SO ORDERED.**

Dated: Brooklyn, New York
January 3, 2020

                                                                                                            s/Ann M. Donnelly

                                                                        ANN M. DONNELLY
                                                                        United States District Judge

---

[11] Because none of the plaintiff's federal claims state a claim for relief, I decline to exercise supplemental jurisdiction over the plaintiff's state law claims arising under New York State Executive Law § 296 and New York City Human Rights Law § 8-107. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction") (citing 28 U.S.C. § 1367(c)(3))).